All right, and will Council on Arnold please step up? Actually, both sides, if you please. All right, and you are? David Oppenheim. Okay, and you represent Mr. Arnold? Yes. And you are? Vincent Laverie, and I represent Dr. Michael Kapraun. Okay, and Mr. Oppenheim, how much time do you want? Fifteen minutes total, three for rebuttal. Okay, and fifteen minutes okay with you? Whenever you're ready, Mr. Oppenheim. Thank you, Your Honor. Please, the Court. This case is a class action. It's always been a class action. It was filed as one in 2011. It was filed as a class action in 2011 with a placeholder class certificate. Certification motion, class discovery was engaged upon in. What's a placeholder certification motion? Right, what the Supreme Court speaks of in Barber, or in Ballard, excuse me, of the motion filed right when the case is filed so that individual relief can't go to play. Okay, and that was the only class motion ever filed? No, Your Honor, if you'd let me. Well, I've read the brief. Okay, so ultimately discovery was had, motion was brought, this time fleshed out with the results of that discovery, and the facts were such that the defendant didn't even contest the appropriateness of class treatment. Rather, what the defendant did was oppose only the adequacy of the then named plaintiff. Adequate representation is an element of class certification. Absolutely. Class certification can be denied if the representative is not adequate, just like it can be denied if the class is not sufficiently numerous. That's absolutely true, and ultimately that's what happened in this court after the circuit court certified the class. But you seem to carve out adequacy as not really relating to certification. No, I don't. I just carve it out as being something that doesn't impact whether the rest of the case is treatable as a class action, or whether the interests of the class are before the court. Well, the cases in law don't really set out a two-step process. First, the judge decides, oh, yeah, there's a class, and oh, yes, this is the representative. It's that two decisions. It's one decision. Absolutely. About the four characteristics. That is true. So how do you manage to carve that out? I don't know that I'm carving it out. My point is simply that the only quibble was with the adequacy. Ultimately, this court did what it did, and it was a case that found Beyer inadequate, remanded for a new class representative. Mr. Arnold stepped forward. Where did it say remanded for a new class representative? It did not do that. Justice Simon's opinion. I understand it was a dissent, but he made that point. Well, that's the minority. It is. The majority didn't say anything different. Yeah, they did. They reversed it. Okay. What, is that their difference? Isn't that a difference between reversal and affirmance? No, absolutely not. It's a question of what happens once the case gets back to the circuit court. When the majority said the trial court erred in certifying a class. That's pretty specific. Okay. And then it was reversed and remanded. Correct. So what you're trying to tell us is it was remanded, and the class was still out there sort of in the ether, even though we said there's no class. I wouldn't exactly put it that way. What I would say is that it was remanded because Mr. Beyer was not found to be an adequate representative. And in those circumstances, typically that happens at the trial court level, and the next step is that there is a time period to go find a new class representative. Ah, but this was at our level. Correct. And you specifically said the court erred in certifying a class. That to me is pretty definitive. Erred in certifying a class. No class. Class is gone. Okay. And then what happened was Mr. Arnold moved to intervene specifically to represent the class. There was no class. It was gone. Well, okay. We reversed the finding that there was a class. And I understand that, but plaintiffs have consistently maintained that there should be one. And that's how it works in every class case. Plaintiffs maintain that there should be a class, and ultimately the courts get their say on it. And the, I guess my point with the previous opinion is that there's nothing in the opinion that says go away, you can never have a class in this case. There is. It says the court erred in certifying a class. Class is gone. No class. Okay. It did remand. It did. At the time I can explain why we remanded it. But it wasn't because there was still a class hanging out there waiting for a new party representative. That could have been done at the trial court. When the trial court, you know, the trial court could have found, you know, fire's just not going to do it, blah, blah, blah. And you guys would have substituted and that would have been taken care of at that level. Once it gets to us and we say no class, there's no class. So if I understand, Your Honor, you're saying that because a class gets certified at the trial court level, and then ultimately the appellate court finds that the representative is inadequate, but otherwise doesn't touch anything else. When the appellate court finds that one of the four required elements is not there, there is no class. And that's what we said, Justice Hyman wrote, the court erred in certifying a class. No more class. So am I understanding Fire is an individual, also suit is an individual. He had certain rights and remedies. So I guess I'm confused because I don't think there's any decision ever that said that when a particular representative is found to be inadequate to represent a class, that no one else can represent that class. At the trial court? At any level. I've never seen a decision that said that. I think you're misinterpreting what the Justice said. I think it says that in this case, when it went back to the trial court, there was no class. That's the situation. At that point, there was no class. You had a case pending with a plaintiff, and it had an individual plaintiff. That was it. And then Mr. Arnold steps in, and he files his motion. He files a motion to intervene. Correct. Does he file a motion for class certification? I believe the motion for intervene adopted the motion for class certification. You believe or you don't? It did, yes. The motion, so you, so your position now is that the motion to intervene adopted, how do you adopt a motion that's been denied? Mr. Arnold, and I admit I see a lot of this as form over substance, and that's just from where I'm standing, but what Mr. Arnold did was he Well, it's not form over substance. We have a statute that we have to follow. And I understand that. And there are requirements under the law, and just because this is a class action doesn't mean that those requirements don't come into play. Absolutely. So I don't think this is form over substance. This is substance. Okay. And the substance here is that Mr. Arnold filed a motion, and in that motion said, I want to intervene in this case for the purpose of representing a class. That is my motion. But he did not file an individual motion for class certification. He just adopted what Reier had done. And remember, in this was, let's focus on the sequence of events here, too, because I think this is important. Mr. Arnold files his motion to intervene saying what it says. And it is what it is, and you're going to tell us what it is. Defense opposes that motion. Well, first, defense tries to send $1,500, then opposes the motion saying your claim is mooch, your claim is time bar. We make the arguments that in our understanding of the buyer decision, that the class was not, did not completely go away, I guess. That it was still before the court. Without Justice Simon's dissent, how do you get there? I used Justice Simon's dissent. Right. So you rise or fall with the majority. So without Justice Simon's dissent, there's no credible way to argue that this class somehow survived. And all it was, it was a headless class just looking for a representative. And I guess, and that may be the hangup, and I'm just thinking about the standing here today, is that the issue is not whether the class survived or didn't. The issue is whether the interests of the class are sufficiently before the court so as to prevent a pick-off under Barber and Ballard, and so as to prevent the statute of limitations running under Steinberg. And typically, you prevent a pick-off by filing a new placeholder motion. I get that. But what I was trying to get to was after they opposed our motion, intervene on the grounds that they opposed it, the circuit court made a ruling. And from the reception I'm getting, I'm understanding that the circuit court may well have been wrong, but she made her record. But what the trial court says about the effect of the appellate court's order has no bearing on its legal effect. What it has a bearing on is what happened next, which is we filed the complaint, which is what we had leave to do. We didn't file a new motion for class certification in reliance on that ruling. Okay. So that's an argument you didn't make in the trial court, that there was detrimental reliance. I think we did. I think it's in there, and in fact, we attached the transcript in opposing the motion to dismiss. Well, it really cites a point in everything you're saying because you filed Arnold Six to leave to intervene as a class representative. It was August 22nd. Right. And the date the Illinois Supreme Court denied Breyer's TLA was May 25th. Right, but the mandate didn't issue. Well, wait, wait, wait. We'll get there. Will you agree, then, that the time between May 25th and August 22nd is 89 days? Sounds right. And if the date of the judgment of the appellate court decision is fixed on May 25th, you're too late. I disagree. If it's fixed on May 25th, you're not too late? No, because the class claims never stopped being before the court. There was never a ruling that this case could not be a class action. Wait, wait, wait. There was no class who was denied. What does that mean? When a court denies a class, say it's in the trial court or appellate, it doesn't matter. What's that mean? It depends. No, no. How does it – what does it depend on? Whether the reason for the denial is something that's universal to the class or whether it's specific to the individual seeking to represent it. Okay. In what case are you relying on? Sawyer. And what does that say about that differentiation? That in one case the statute of limitations starts running again and in the other case it doesn't. Well, how can it start running when the class has been defeated? There is no class representative. There is no class. And the judgment was reversed. What was reversed was the class. That means there is no class. It's denied. There is no class motion. There's no class representative. And that's why if what you're saying is true, the – you would be rewriting statute of limitations law because – Steinberg did it. Steinberg wrote that law. No, Steinberg doesn't say what you're saying. So you're saying that it doesn't matter when you file. You could have filed 20 years from now and it would still be running. You know, you've got a million years. But if I filed 20 years from now, then it would have been denied because it wouldn't have been diligent and timely under the intervention statute. Well, maybe it's not diligent or timely here, but that wasn't the decision of the court. No, and they've waived that argument by not cross-appealing the intervention. Okay. Well, let's assume for purposes of argument that you had filed – you had 89 days to file and you filed short of – you had 65 days to file and you filed on the 89th day because the judgment of a court is different than the mandate. Do you agree a judgment of a court is different than a mandate? Two different things, for sure. Okay. And on what basis do you say a mandate must come down if that is the date of judgment rather than what the courts have said and what the statutes say and what the rules provide? The mandate is what reestablishes jurisdiction in the circuit court. No motion can be filed before that happens. But that's different than tolling. Tolling is one thing. Why is that different from tolling? I don't understand. Because it is. It's a completely different concept. You can have a final judgment that stops the tolling of the statute of limitations before the mandate issues. So in other words, this court's going to hold that because of the quirk of our system and the slow grinding of the wheels of justice, that a decision is going to come down that allows for a substitution of a new class representative, whether explicitly or implicitly, but that substitution is a nullity. That possibility is a nullity. It's illusory because by the time the case makes it back to the circuit court, oh, whoops, time's up. You had time after the mandate issue to file your motion to intervene. You had time. You had 64 days. After the mandate issued and we filed on day 48. No. No. We went through this. No, you counted from the date of the mandate. No, not from the mandate. Oh, okay. The mandate's 48 days. Right. I said the mandate is meaningless. The date of the judgment, the law, I'm just telling you what the law says, that our judgment came out and became effective on May 25th. It doesn't matter when the mandate comes. So from May, we went through this, May 25th to August 22nd, 89 days, you had 65 days in which to file. So you had two and a half months, two months, over two months. Well, the court, the case didn't make it back to the circuit court. Nothing could have been filed on May 25th. Right. Nothing could have been filed on May 26th. It made it back in early July, right? Mandate. Somewhere in July, yes. Right. And so you still had time to move to intervene, and you waited until the end of August. But essentially what the court is saying is that days left on the tolling calendar get eaten up during a time period when the case is not in the court and no motion can be filed, and I just think that is untenable. Did you file a motion to expedite the mandate? We did not. Okay. People do that. So if you were, of course, you were aware of the statute of limitations problem, and if you were worried about the mandate being, for whatever reason, taking time, knowing that the judgment of the court would come about on the date that the Supreme Court denied the TLA, you had options. I mean, everything is clearer in hindsight, I suppose. But based on the reading of Beyer, which we had, which the Supreme Court had apparently in ruling on the intervention motion, was that this case is coming back for the purpose of finding a new adequate class representative who will do a motion to intervene when it comes back. Well, that was your decision. But the court, you said at the very first question of Justice Mason, you were relying on the dissent. And that, to me, is kind of problematic when dissents are not the thing that usually somebody relies on in a case. Usually it's the majority opinion. Well, there's nothing in the majority opinion, though, that says that you can't get a new class representative when the case comes back. No, but you have to start over. It doesn't say that either. Well, let's see. It does say that the court erred in certifying the class. And then it explains why. But when the case was remanded, the only thing that was left was the Beyer Clinic's individual claim. I disagree, Your Honor. What was left was the class, and it became headless. And Arnold stepped up. He did so, we believe, and the circuit court believed, on intervention in a reasonable amount of time. And he should be entitled to do what the circuit court said he could do in granting the intervention motion, which is engage in discovery and test whether he's adequate to represent this class. All right. Thank you, Your Honor. We've kept you. We'll give you a few minutes for rebuttal. Oh, thank you. All right. Mr. Laverie? Thank you. May it please the court. As indicated, my name is Vincent Laverie. I represent Michael Capron. I have a couple of initial comments. The first has to do with the China aggregate case that the U.S. Supreme Court decided in June of this year. Basically, that case stands for the proposition that under American Pipe and Crown Cork, tolling will only preserve an individual claim. It doesn't preserve the class claims filed after a statute of limitations. So I think in determining what actually is left of this case, you have to go back and look at China aggregate. And that basically will preserve only the individual claims that Arnold might have in this case, assuming that there isn't another basis to dismiss those claims. Well, what about counsel's reliance on Sawyer to argue that this was a reversal of class certification on a ground that was particular to the class representative, that the numerosity, commonality, and other determinations still stood? Sawyer has basically been effectively overruled by China aggregate. Sawyer was a case that involved class cross-jurisdictional tolling. It was a case that was initially filed in state court in Wisconsin. That case was dismissed. There's no reason given for the dismissal other than the class plaintiff did not want to proceed. Then Sawyer ended up refiling that case in the Eastern District of Wisconsin. And then the case ended up going up on appeal. And Sawyer stood for the proposition that class actions, including class allegations, are tolled during the pendency of the state court action. So it allowed class or cross-jurisdictional tolling, which is something that the Illinois Supreme Court in the Portwood v. Ford Motor Company case does not permit. But Sawyer dealt with class claims, whether you could pursue a class action after a prior class action lawsuit had been dismissed. The China aggregate case effectively overruled Sawyer, saying the only claims that are preserved are the individual claims that might be filed that are tolled, and you have until whatever the remaining time left on the statute of limitations is. So I don't think Sawyer really is germane at this point. I think the court needs to look at the China aggregate case and what China aggregate did with respect to the tolling of class claims. We don't need to look at either of those because they're federal courts, and this is a procedural issue with regard to the Rule 801. Correct. So that's talking about Rule 23. Correct. And you're absolutely correct, Justice. And one thing I would like to point out is that you're using the May 25, 2016 date as the date on which the Illinois Supreme Court issued its mandate. No, it didn't issue the mandate. Denied the PLA. Your opinion was issued on January 19, 2016, and I think under the PSL Realty v. Granite Investments case, the effective date of the judgment is when this court issued its order reversing the trial court's decision on class certification. And I've not seen anything in Illinois that discusses whether or not tolling continues during dependency of subsequent appeals. We've cited a few cases in our brief at pages 15 to 16 that indicates that tolling doesn't continue during dependency of the appellate process once the case has been reversed. So somebody in Mr. Arnold's position who wanted to step up as class representative and counsel sees that the class certification is reversed, his option is to do what? First of all, I think China Agritech only preserves once the – there are three cases, there are three plaintiffs, as the court is aware. There's the MDH plaintiff, which dismissed its case on February 10, 2011. At that point, there were 64 days left on the statute of limitations with respect to the individual TCPA claims. I'm relying upon China Agritech. In one year, 64 days left on the conversion claim, which is a five-year statute of limitations. So whoever wanted to pursue individual claims vis-à-vis Capron needed to file an individual claim within that 64 days, and that expired on April 15, 2011, I believe. But if they came in, if they knew – I mean, it happens that new class representatives surface, and they come into the case and say, I'd like to be the class representative, right? Correct. So it's – I know you're drawing a distinction between tolling the class action and tolling individual claims. Correct. But your argument almost sounds like the only thing you can do when class certification is denied is go pursue your individual claim. That is partially correct. And the reason I say that is that you can pursue class claims so long as there's time remaining on the statute of limitations. In this case, there's a five-year statute of limitations for conversion. Assuming that there were two fax dates in March, March 2nd and March 3rd. Assuming you're using the March 3rd date, March 3rd, 2006, a class action could have been filed on the conversion claim on or before March 3rd, 2011. And so there was actually a – Byer did pursue the conversion claim. And I think he was entitled to it on a class basis. With respect to the TCPA claim, I don't think he was entitled to it because I think the statute of limitations had run on that. And so he's entitled to pursue his individual claim. So I think it gets a little dicey with the dates and stuff, but I think ultimately, I think the trial court did come to the right conclusion on a number of bases. I would like to add a couple of things. And the first thing is that counsel, in their briefs, they have never challenged the dismissal of the conversion claims. Certification was never sought on the conversion claim. And so I think, as Judge Stenokopoulos found in the trial court, that Byer, by not pursuing certification, abandoned the conversion claim. And so I think July 3rd, 2014, was the date on which the motion for class certification was filed. And I think the statute of limitations on the conversion claim would start running on that date. So if he had pursued a class certification with respect to the conversion claim, there's a different argument. But they never did anything with respect to the conversion claim. Secondly, counsel indicated during oral argument that he believed that he adopted, or I don't know if he adopted, the class certification motion. If you look at pages 8 and 9 of Justice Stenokopoulos' opinion, she states, in this case, the only motion for class certification on file was filed on July 3rd, 2014, by Byer Clinic. Then she goes on at page 9 and states, it is undisputed Arnold did not adopt Byer Clinic's complaint or prior motion for class certification. So, you know, I think that... So there's no motion for class certification? There was never any motion for class certification. He didn't adopt it. Pardon me? She says he didn't adopt it. He didn't adopt it. He did not. I don't understand. Counsel just said that he did adopt it. In intervening, he sought to... I would invite counsel to point out in the record on appeal specifically where that occurred. It did not occur. And what... He did file a motion in, I think, March of 2013. And the motion was filed as a motion to appoint Arnold as class representative. But it wasn't a motion for class certification. I'm not... And that motion was filed after the post-intervention tender was made. So one of the other things I did want to mention also is that there's some language in the Barber case. And the Illinois Supreme Court was referring to a situation where a motion for class certification had been filed. And the Supreme Court stated, and I quote, where the named representative has done so and the motion is thus pending at the time the tender is made, that the case is not moot and the circuit court should hear and decide the motion for class certification before deciding whether the case is mooted by the tender. With respect to this case, because this court reversed the class certification order, there was no pending motion for class certification. That was deemed to be a nullity by this court. So under your theory, somebody in Mr. Arnold's position, because the mandate had not issued, couldn't file a motion to intervene accompanied by a motion for class certification because there's nothing pending in the trial court, but the defendant can still make the tender to moot the claim. Is that... Does that sound right to you? That's not entirely correct. There was nothing to prevent Arnold from filing a motion, even though the trial court was not revested with jurisdiction. The trial court can decide the motion once it has been revested with jurisdiction, number one. And number two, the thing that is ignored by Arnold is there was nothing preventing him from filing a brand new case. If he was concerned about the statute of limitations, file a new case. Don't wait until the appellate process has concluded. Well, that's what FIRE did, right? Pardon me? That's what FIRE did. Well, what happened in that case is Justice Arnold refused to allow intervention. And so on February 10th, the MBH case was non-suited by the same counsel who was representing FIRE, the same counsel who was representing Arnold, and on that very same day a new class action complaint was filed. So they could have done the same thing here is what you're saying. Absolutely. There was nothing preventing him. So another alternative would have been just to file a new case. Correct. And that, in fact, is ignored, and Arnold has proffered no reason why it could not file a new lawsuit. There's nothing that prevented that from happening. Which is really one of the reasons for the tolling is to allow other parties out there the opportunity to do so when somebody has a class action pending. If it wasn't told, then everybody would be holding their breath. This way, once it's lost, anybody can come in. Correct. And one of the other things, too, and I just want to point out that with respect to the earlier appeal, that was done on a limited record. We had filed a petition for leave to appeal and attached whatever limited record this court needed to decide that appeal. So when Justice Simon wrote his dissent, and this court considered the case, they didn't have the benefit of knowing what transpired with respect to the MBH case, which was actually appended to various motions that had previously been filed in the case. So I understand where Justice Simon was coming from. However, as was pointed out by this court, it's the majority opinion that is controlling, not what Justice Simon said in his dissent. I don't know if the panel has any further questions for me. All right. Thank you. Thank you, Mr. LeVere. Certainly. Mr. Oppenheim. I'll try to be brief. I appreciate the panel's indulgence. With respect to China Agritech, as Justice Simon pointed out, it's a federal decision. It deals with federal cases under Federal Rule 23. This court is still bound by Steinberg and Portwood, which is interesting, because on the other issue that we didn't talk much about, the mootness issue, you're still bound by Barber and Ballard, despite the fact that the U.S. Supreme Court and federal court has come out with Campbell-Ewald, which says that any sort of rejected offer is a nullity. With respect to the- But there was an offer and judgment case, right? Yeah. But, yeah, Justice Kagan, I believe, said essentially what I just said in a more eloquent way in that decision in Campbell-Ewald. Moreover, I'd also like to point out that in opposing class certification, the first go-round, and also in defending the case the first go-round, defendants never raise the statute of limitations defense, based on this notion that when you rely on tolling to bring a case, you can't make it a class action. That's a limitation that the Supreme Court just made for federal cases, but as they pointed out in the decision, it was something that they just did because they created the tolling exception in the first place. If Illinois wants to go down that road, the Supreme Court's going to have to do it. To change subject a little, there was nothing prohibiting Mr. Arnold from filing his own lawsuit at any time, was there? After the class was denied by the appellate court, Mr. Arnold could have filed at any time. I suppose that's true, although we addressed this scenario a bit in the reply brief, and ultimately if he had, the defendant would have had the option to remove it to federal court, and then we'd be dealing with the federal procedures. But ultimately, I mean, again, a lot of work was done on this case. A lot of work was done in working up the class, and the only flaw really was that Bayer wasn't adequate, and so it seems like it makes sense from a judicial efficiency standpoint to have somebody step in. And ultimately, I was thinking about kind of the flow of the questions, and while there obviously is no certified class following this panel's holding in the Bayer decision, the question is what there was, because both the concept of tolling under Steinberg and the mootness decisions of Ballard and Barber both say that a class is something from the point of filing to the point of moving for certification and getting a decision. During that time period, it's undisputed that you can't tender individual relief and pick off a representative, and the claims are tolled because the rest of the class has a right to rely on the case proceeding as a class action. The question is, and this is a question that has not been answered in Illinois, is when you get a decision denying class certification, but that denial is particular to the issues with the class representative, does it place the case back in the position that it was from filing to the motion for class certification, or does it do something else? And we would maintain that it puts it back in that putative class status as opposed to a no class status, and that what Steinberg and Barber and Ballard say about their respective issues is that they come into play once you have a no class ever status. So just so I understand your position, you would argue that the only timeliness consideration on remand is the timeliness of the petition to intervene, that the statute of limitations was never in jeopardy? Absolutely. Okay. Thank you, Your Honor. Thank you. All right, thank you both for your briefs and your arguments here this morning. We will take the matter under advisement. Court will stand in recess.